PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RONALD LAMONT SELDON, a/k/a Pee Wee,

*Defendant-Appellant.*

⎫
⎪
⎪
⎬   No. 04-4473
⎪
⎪
⎭

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CR-03-93-JFM)

Argued: February 2, 2007

Decided: March 15, 2007

Before WIDENER, MICHAEL, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Widener and Judge Michael joined.

## COUNSEL

**ARGUED:** Ronald Ira Kurland, LAW OFFICES OF KURLAND & KURLAND, Baltimore, Maryland, for Appellant. Christine Manuelian, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

KING, Circuit Judge:

Ronald Lamont Seldon appeals the denial of his motion to suppress evidence discovered as a result of a July 13, 2000 search of his vehicle by the Maryland State Police (the "MSP"). Seldon was convicted, in the District of Maryland, of conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. § 846; and conspiracy to engage in unlawful monetary transactions, in violation of 18 U.S.C. § 1957(a). These convictions were the result of Seldon's conditional guilty plea, pursuant to which he reserved his right to appeal the suppression ruling. Seldon contends that the evidence underlying his convictions was the fruit of an unlawful search of his vehicle. As explained below, we reject this contention and affirm.

I.

A.

1.

On October 29, 1999, Sgt. Mike Lewis of the MSP received a telephone call from Deputy Carson Wentland of the Wicomico County (Maryland) Sheriff's Department. Deputy Wentland related that he had been contacted by the Pohanka Mazda dealership in Salisbury (the county seat of Wicomico County), and informed that Pohanka's service technicians had found what was "apparently a false compartment" in a van that had been brought to the dealership for repairs. Supp. J.A. 68.[1] Sgt. Lewis was the MSP's instructor on the subject of traffic stop techniques, including how to detect hidden compartments in vehicles, and Deputy Wentland requested his assistance in responding to the Pohanka call.

When Sgt. Lewis arrived at Pohanka Mazda later that day, he

---

[1]Citations herein to "Supp. J.A. ___" refer to the contents of the Supplemental Joint Appendix filed by the parties in this appeal.

spoke to the service technicians who had reported the hidden compartment. The vehicle in question was a white 1998 Mazda MPV minivan that had been brought to Pohanka for service because it was "hard starting" and "cut[ ] off after starting." Supp. J.A. 74. Pohanka technicians informed Lewis that they had traced the problem to the fuel pump, which was inside the gas tank, and that when they had attempted to access the tank to repair the pump, they had discovered two hidden compartments. One of the compartments was located inside the gas tank, and the other was located near the gas tank.

After his initial conversation with the technicians, Sgt. Lewis conducted his own firsthand examination of the van's interior (the "Pohanka search"). The compartment inside the gas tank (the "first compartment") was accessible by removing some bolts from the front passenger-side seat and lifting the seat upward. Pohanka personnel guided Lewis to the seat and lifted it to reveal the first compartment; the bolts had been removed earlier. The technicians then showed Lewis what appeared to be the exterior of a second compartment, this one underneath the middle passenger-side seat (the "second compartment"). Unlike the seat above the first compartment, the seat above the second compartment could not be lifted by hand; rather, it appeared to be secured and controlled by a system of electronically operated pistons. Lewis noticed a wire near the second compartment, and knew from experience that it might control the pistons that secured the seat. He attached alligator clips to the wire and directed electrical current into it in an attempt to raise the seat and expose the compartment. This effort to raise the seat was unsuccessful, however, and Lewis took no further steps to access the second compartment.

After he had concluded the Pohanka search, Lewis asked the dealership employees who had brought the minivan in for repairs. The Pohanka personnel informed Lewis that "it's a guy that brings it in here all the time," named Ron Seldon. Pohanka employees also gave Lewis a photocopy of the documentation for the service visit, which indicated "who brought the vehicle in." Supp. J.A. 74. Lewis recorded the minivan's license plate number and vehicle identification number. He also contacted the Wicomico County narcotics task force and learned that Seldon was suspected of being a major drug dealer. Lewis filed incident reports concerning Seldon and the van with the

Wicomico County narcotics task force and the Drug Enforcement Agency.

2.

Nine months later, on July 13, 2000, Lewis was driving on Route 50 in Annapolis, Maryland, when he observed Seldon travelling at approximately 71 miles per hour in a 55 mile per hour zone. Lewis stopped Seldon for speeding in the van in which the Pohanka Mazda technicians had discovered the hidden compartments. Lewis later testified, however, that he did not recognize the vehicle at the time he initiated the stop. When Lewis approached the van, Seldon rolled down the vehicle's window, and Lewis "immediately was met with a very strong odor, overwhelming odor of air freshener, coupled with fabric softener sheets." Supp. J.A. 81. Based on his knowledge and training, Lewis knew that individuals transporting illicit drugs commonly use large amounts of air freshener to mask the drugs' odor. Lewis also observed several decals on Seldon's windshield indicating support for police charitable organizations. Lewis was aware that vehicles used to transport contraband often bear such collections of pro-police decals.[2]

Lewis asked Seldon for his driver's license and registration card. When Seldon reached into his pocket to retrieve his driver's license, he also brought out a thick bundle of cash, which Lewis recognized as another indicator of illegal drug activity. In addition, as Seldon searched for his registration card, Lewis noticed signs that he was nervous: he was breathing very deeply, his carotid pulse was pounding, and he avoided eye contact with Lewis. "In fact," Lewis testified, "on one occasion he actually stopped doing what he was doing and he just

---

[2]Lewis also testified that he detected, emanating from Seldon's vehicle, an odor that he associated with large quantities of illicit cocaine. The district court concluded that Lewis's belief that he had smelled cocaine was not a legitimate basis for his search of the van. Supp. J.A. 198. Because we agree with the court that factors other than Lewis's asserted detection of the scent of cocaine gave him probable cause to search Seldon's vehicle, we need not reach or address the issue of when, if ever, an officer's perception that he has smelled cocaine can contribute to probable cause for a search.

sat in his seat and . . . sighed, and then he started looking again for the registration card." *Id.* at 82.

When Lewis saw the name on Seldon's driver's license, he realized that Seldon was the individual whose minivan he had examined at Pohanka Mazda. Lewis also recalled that Seldon was the subject of an investigation by the Wicomico County narcotics task force, and he called a task force official to make sure that any action he took with regard to Seldon would not interfere with that investigation. The official advised that the task force had no objection to Lewis's taking enforcement action against Seldon. Lewis then called for backup and conducted a search of Seldon's van (the "Annapolis search"). In the hidden compartment under the middle passenger-side seat, he found a package containing approximately 500 grams of cocaine and two packages containing a total of approximately 850 grams of marijuana. Each package was wrapped in fabric softener sheets, saran wrap, and clear packing tape.

After the Annapolis search, law enforcement officials continued to investigate Seldon's illegal activities. In the course of such investigation, they sought and obtained search warrants for areas (including buildings) in which Seldon possessed a privacy interest. Probable cause for these warrants was provided, in part, by the evidence discovered in the Annapolis search. The searches conducted under warrants obtained after the Annapolis search yielded evidence that was used in Seldon's subsequent prosecution.

3.

On February 20, 2003, Seldon (along with co-conspirators including his mother, his girlfriend, and his girlfriend's mother) was indicted by a federal grand jury in the District of Maryland, on charges including conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. § 846; and conspiracy to engage in unlawful monetary transactions, in violation of 18 U.S.C. § 1957(a).[3] On September 30,

---

[3]Seldon was also prosecuted in the Circuit Court for Anne Arundel County, Maryland, on charges including possession of controlled sub-

2003, Seldon moved to suppress all seized evidence that had resulted from the Annapolis search, contending that the Pohanka search had been unconstitutional under the Fourth Amendment, and that Lewis would have lacked probable cause for the Annapolis search had he not learned of Seldon's hidden compartments in the course of his earlier unlawful Pohanka search.

On November 24, 2003, the district court held a hearing on Seldon's suppression motion. The court observed that Sgt. Lewis had lawfully learned, from his conversations with the employees of Pohanka Mazda — and independently of his personal examination of Seldon's vehicle in the Pohanka search — that Seldon was the driver of a van containing hidden compartments. *See* Supp. J.A. 205-06. In light of Lewis's training and experience, the court concluded, this lawfully obtained knowledge, plus the other indicia that Seldon was transporting illicit drugs, had provided Lewis probable cause to conduct the Annapolis search. *See id.* at 223. The Annapolis search had thus been lawful even if the Pohanka search had not, because the latter search had not served as the basis for the former. Accordingly, the court, ruling from the bench, denied Seldon's motion to suppress the evidence that had resulted from the Annapolis search. *See id.* at 232.

On March 29, 2004, Seldon entered a conditional guilty plea, contingent on the reservation of his right to appeal the district court's suppression ruling. *See* Fed. R. Crim. P. 11(a)(2) (authorizing conditional guilty pleas). On June 8, 2004, the court sentenced Seldon to 360 months' imprisonment on each of the two counts of which he was convicted, those sentences to run concurrently. Seldon has timely appealed the denial of his motion to suppress, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

stances with intent to distribute. In those proceedings, he made a suppression motion similar to the one at issue here. The circuit court denied his motion, but on appeal, the Court of Special Appeals of Maryland reversed, ruling that both the Pohanka and Annapolis searches had violated the Fourth Amendment. *See Seldon v. Maryland*, 824 A.2d 999 (Md. Ct. Spec. App. 2003).

B.

In an appeal of a district court's ruling on a motion to suppress evidence, we review the court's legal conclusions de novo and its underlying factual findings for clear error. *See United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992).

II.

Seldon contends that Sgt. Lewis lacked sufficient lawfully obtained information to provide probable cause for the Annapolis search, and that the district court erred in concluding otherwise. The heart of Seldon's position is that Lewis's knowledge regarding Seldon and the hidden compartments was constitutionally tainted because it was the result of the Pohanka search, which Seldon maintains violated his Fourth Amendment rights. Thus, Seldon asserts, the only lawfully obtained information supporting the Annapolis search was the indicia of drug-running that Lewis observed when he pulled Seldon over for speeding: the strong odor of air freshener, the thick bundle of cash, the pro-police decals, and Seldon's unusually nervous behavior. Those factors, Seldon contends, were insufficient to provide probable cause to search his vehicle.

Seldon altogether ignores, however, the district court's finding that Lewis knew of the hidden compartments, and Seldon's identity as the van's owner, from a source independent of the Pohanka search: the information reported by the Pohanka Mazda employees. And the evidence of record confirms the district court's finding in this regard. In the telephone call that initiated Lewis's involvement in this matter, Deputy Wentland, of the Wicomico County Sheriff's Department, notified Lewis that technicians at Pohanka had reported what was "apparently a false compartment" in a vehicle they were servicing. Supp. J.A. 68. When Lewis arrived at the Pohanka dealership, technicians there explained to him the nature of the hidden compartments that they had discovered. And, significantly, dealership employees — not Lewis's examination of the van's interior in the course of the Pohanka search — were also the source of his knowledge that Seldon was the van's driver. It is well settled that no constitutional violation occurs when a private citizen uncovers evidence of criminal activity and reports it to the authorities, regardless of whether the citizen dis-

covers the evidence by means that would have been constitutionally available to government agents. *See United States v. Jacobsen*, 466 U.S. 109, 119-20 (1984); *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921).

Because Lewis had an independent, untainted source for his knowledge of the hidden compartments and Seldon's connection to them, he could lawfully rely on that knowledge in deciding to conduct the Annapolis search — even if the Pohanka search had been unlawful.[4] *See United States v. Wardrick*, 350 F.3d 446, 452-53 (4th Cir. 2003) (where information underlying search warrant was obtained through assertedly unlawful search, fact that same information was also obtained from independent, lawful source cured any possible taint); *Sutton v. United States*, 267 F.2d 271, 272 (4th Cir. 1959) ("It is one thing to say that officers shall gain no advantage from violating the individual's rights; it is quite another to declare that such a violation shall put him beyond the law's reach even if his guilt can be proved by evidence that has been obtained lawfully."); *see also Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920) (recognizing that even illegally obtained facts are not "sacred and inaccessible" and that "[i]f knowledge of them is gained from an independent source they may be proved like any others"). And, we agree with the district court that Lewis's lawful knowledge concerning Seldon and the hidden compartments, combined with his observation of indicia that Seldon was transporting illicit drugs, provided probable cause for the Annapolis search. We therefore reject Seldon's contention that evidence resulting from the Annapolis search should have been suppressed.

### III.

For the foregoing reasons, we affirm the district court's ruling on the suppression motion.

*AFFIRMED*

---

[4]Because we conclude that Lewis possessed probable cause for the Annapolis search independent of the knowledge he acquired in the Pohanka search, we need not reach or address Seldon's contention that the Pohanka search was unconstitutional.